| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| MARVIN REX RANKIN III,[1] | ) |
| SSN: XXX-XX-3901 | ) CASE NO. 20-80495-CRJ11 |
| | ) |
| MARY BETH LEMMOND RANKIN | ) |
| SSN: XXX-XX-7950 | ) |
| | ) |
| Debtors. | ) CHAPTER 11 |
| | ) |

## MOTION BY BRYANT BANK FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, Bryant Bank by and through its undersigned counsel, and hereby moves for relief from the automatic stay pursuant to Section 362(d) of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 4001and Local Rule 4001-1. In support of this Motion, Bryant Bank states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicate for relief requested herein is 11 U.S.C. §362.

### BACKGROUND

3. On February 13, 2020, Marvin Rex Rankin III ("Rex") and Mary Beth Lemmond Rankin ("Mary Beth"), as well as RWS Charter LLC ("RWS") and Bayport Corporation, Ltd.

---

[1] In addition to Marvin Rex Rankin III and Mary Beth Lemmond Rankin the Debtors include RWS Charter LLC, Case No. 20-80470-CRJ11 and Bayport Corporation Ltd, Case No. 20-80471-CRJ11. On March 12, 2020 this Court entered an Order procedurally consolidating these cases [Doc. 42].

1

("Bayport") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

4. Pre-petition the Debtors owed Bryant Bank (hereinafter "the Bank") the approximate sum of $2,593,772 plus accrued interest, costs of collection and other charges (hereinafter "the Debt") evidenced by the following loan instruments:[2]

   a. For Loan Number 6000122683, a promissory note dated March 14, 2011 in the original principal amount of $2,000,000 executed by Rex in favor of the Bank, which was most recently renewed by Rex and RWS in a promissory note dated October 17, 2019. This debt matured on November 17, 2019 pursuant to which Rex and Bayport owe the sum of 1,044,019.07 to the Bank plus accruing interest and costs. A copy of the current note is attached to the Motion as Exhibit 2.

   b. For Loan Number 6000277105, a promissory note dated June 17, 2016 in the original principal amount of $2,300,000 executed by Bayport and Rex in favor of the Bank, which was last extended by a Change in Terms Agreement dated June 24, 2019. This debt matured on October 24, 2019 pursuant to which Bayport and Rex owe the sum of $1,300,000 to the Bank plus accruing interest and costs. A copy of this Change in Terms Agreement is attached as Exhibit 3 to the Motion.

   c. For Loan Number 6000288638, a promissory note dated December 6, 2016 in the original principal amount of $152,000 executed by Rex and Mary Beth in favor of

---

[2] The Affidavit of Kenneth D. Watson which is attached to this Motion as Exhibit 1 is offered by the Bank in support of the material allegations contained in this Motion including those that relate to the debt, the collateral securing the debt and the non-payment of the debt.

2

the Bank, which was last extended by a Change in Terms Agreement dated June 24, 2019. This debt matured on October 24, 2019 pursuant to which the Rankins' owe the sum of $160,302.49 to the Bank plus accruing interest and costs. A copy of this Change in Terms Agreement is attached as <u>Exhibit 4</u> to the Motion.

5. The Debt is secured by the following collateral:

   a. A real estate mortgage on certain real property commonly known as a 3.37 +/- Acre Lot at or near the South Margin Old Monrovia Rd, Huntsville, Alabama 35806 and 6.4 acres of land located at or near 1656 Old Monrovia Rd, Huntsville, Alabama as evidenced by that certain mortgage bearing Instrument Number 20160622000344130 and recorded in the probate records for Madison County, Alabama. A copy of this mortgage is attached as "<u>Exhibit 5</u>".[3]

   b. An Aircraft Security Agreement by and between Rankin, RWS and the Bank with respect to a N976KC, Beechcraft King Air 200 serial number BB-601, its engines, and propellers, and documented by (i) October 17, 2013 Commercial Security Agreement, and (ii) October 16, 2013 Department of Transportation Federal Aviation Administration Civil Aviation Registry Aircraft Registration Branch Aircraft Security Agreement. A copies of these security agreements are attached to the Motion as <u>Exhibit 6.</u>

   c. A First Preferred Ship Mortgage by and between Byeluvyaseaya Limited dated March 14, 2011 and the Bank filed May 30, 2011, with the Registrar of Ships, British Virgin Islands, Road Harbour, Tortola. A copy of the First Preferred Ship

---

[3] The remainder of the real estate identified in this mortgage was sold by Debtor Rex Rankin pre-petition. Rankin who received over $560,000 from the sale of this real estate used said sums to support his lifestyle.

3

Mortgage is attached as "Exhibit 7 and 7a".

    d. A Cross-Collateralization and Cross Default Agreement dated January 11, 2019 pursuant to which Rankin, RWS and Bayport agreed that the aforementioned collateral stood as collateral for all debts owed by any of them to the Bank. A copy of the Cross Collateralization Agreement is attached to the Motion as Exhibit 8.

    e. A Commercial Guaranty dated July 5, 2017 whereby Bayport guaranteed to repay the indebtedness owed by Rex and Mary Beth to the Bank.

    f. A Commercial Guaranty dated July 5, 2017 whereby RWS guaranteed to repay the indebtedness owed by Rex and Mary Beth to the Bank.

    g. A Commercial Guaranty dated January 11, 2019 whereby RWS guaranteed to repay the indebtedness owed by Bayport to the Bank.

    h. A real estate mortgage on certain real property commonly known as 901 Main Street E. Hartselle, Alabama 35640 ("Hartselle Property") and recorded in the probate records for Morgan County, Alabama. A copy of this mortgage is attached to the Motion as Exhibit 9.

(The real estate, aircraft, yacht and commercial guaranty are hereinafter collectively referred to as "Collateral").

6. Since the filing of this case, the Debtors have not made any payments to the Bank despite being in possession of and using some or all of this Collateral. See, K. Watson Affidavit. Furthermore, the terms of each note also allow the Bank to be reimbursed all costs of collection including reasonable attorney fees and all amounts advanced by the Bank on behalf of the Debtors. Id.

7. Moreover, prior to September, 2019 the luxury yacht known as "Byeluvyaseaya", (the "Yacht") had a value of over 2 Million Dollars. Id. In September, 2019 the Yacht was significantly damaged by Hurricane Dorian in the Bahamas. Id. Subsequent to the Yacht being damaged, the Bank was informed that there was no insurance in place to protect its interest in the Yacht. Thus, the value of the Bank's collateral interest in the Yacht has been significantly impaired or eliminated altogether. Id.

## RELIEF REQUESTED

**The Bank is Entitled to Relief from the Automatic Stay Because the Debtor Does Not have Equity in the Collateral nor It is Not Necessary for the Debtors to Reorganize**

8. Under § 362(d)(1) of the Bankruptcy Code, relief from the automatic stay is appropriate for "cause including lack of adequate protection of an interest in property".

9. Under subsection §362(d)(2) a court shall grant relief from the stay if the Debtor does not have equity in the property and the property is not necessary to an effective reorganization. A debtor lacks equity when the balance of all debts secured by liens on the property exceed the fair market value of the property. *In re Powell*, 223 B.R. 225, 235 (Bankr. N.D. Ala. 1998).

### **1979 Beechcraft King Air Airplane N976KC**

10. Rex and RWS filed their bankruptcy petitions on February 13, 2020. Since that time, these Debtors have remained in possession of the 1979 Beechcraft King Air Airplane N976KC ("Aircraft") pursuant to §363. See, K. Watson Affidavit.

11. The Debtors' continued use of the Aircraft is subject to the requirement that the Bank be provided with adequate protection of its interest in the Aircraft. 11 U.S.C § 363(e). Section 361(1) of the Bankruptcy Code defines adequate protection to mean, among other relief,

5

Case 20-80495-CRJ11    Doc 182    Filed 11/13/20    Entered 11/13/20 09:26:26    Desc
Main Document    Page 5 of 14

requiring the Debtor to make a periodic cash payments to the Bank to compensate it for the depreciation of the value of its collateral as a result of the stay or use of such collateral.

12. In this case, neither Rex nor RWS have offered adequate protection payments to the Bank despite their continued use of the Airplane. See, K. Watson Affidavit. Indeed, based on their Operating Statements Rex and RWS are not capable of making such payments. The Operating Reports for both RWS and Bayport show no income. Moreover, the Rankin's individual Operating Reports do not show the ability to pay adequate protection payments to the Bank. For the period of April through August, 2020 the average income for the Rankins per their Operating Reports was only $1,360. That is hardly sufficient to support a debt of $2,593,772.

13. Additionally, post-petition the Bank has had to pay monthly hangar fees in the amount of $575 and $24,700 in insurance premiums in order to protect and preserve the Bank's interest in the Aircraft. See, K. Watson Affidavit.

14. Moreover, the Debtors do not have any equity in the Airplane and it is not necessary for their reorganization. As noted the debt which encumbers the Plane is $2,593,772. The market value of the Plane is approximately $950,000 before liquidation costs. See Affidavit of Mark Cobb attached as "Exhibit 10". Furthermore, the longer the Plane sits in the hanger without having the necessary inspections done the more it will depreciate in value. *Id*. Based on the Operating Statements it is clear that the Aircraft is not being operated nor it is not necessary for the Debtors' reorganization.

15. For all of these reasons, the Bank is entitled to relief from the automatic stay in order to protect its interest in the Aircraft by obtaining possession and liquidating it since the Debtors

cannot offer sufficient adequate protection to the Bank, they lack equity in the Aircraft, and it is not necessary for their effective reorganization.

**Vacant 3.37 +/- Acre Lot South Margin Old Monrovia Rd, Huntsville, Alabama**

16. As noted above, pre-petition the Debtors owed the Bank at least $2,593,772.

17. Bayport owns and is in possession of certain real property commonly known as a 3.37 +/- Acre tract located near Lot South Margin Old Monrovia Rd, Huntsville, Alabama 35806 pursuant to §363 of the Bankruptcy Code.

18. Similar to the Aircraft, while the Debtors have continued to use and possess this 3.37 acre tract they have not made any adequate protection payments to the Bank since the beginning of this case. See, K. Watson Affidavit.

19. Also similar to the Aircraft, the Debtors do not have any equity in this 3.37 acre tract of real property. Attached as Exhibit 11 is an appraisal of the 3.37 acre tract done in January, 2020. This appraisal shows that the 3.37 acre tract has a fair market value of $539,000.

20. Therefore, even if the Bank credited the full value of the Aircraft ($950,000) and the 3.37 acre tract ($539,000) against the Debt, there would be a remaining deficiency balance of approximately $1,104,772.00.

21. Furthermore this tract is not necessary for the Debtors effective reorganization. This real property is owned by Bayport which it listed in its previously filed bankruptcy schedules. [Doc. 13 at 4]. In its Statement of Financial Affairs, Bayport lists its only prior income – which occurred in 2018 – to be from the sale of land. [Doc. 13 at 14]. Presently, both the 3.37 tract and the 6.4 acres owned by Debtor Bayport are also for sale. So it is clear that this tract is going to be liquidated by the Debtor. Hence, because the Debtor has no equity in this 3.37 acre tract, and it is not necessary for the Debtors reorganization, the stay is due to be

lifted to allow the Bank to protect its interest in this property by obtaining possession and foreclosing upon said interest. In doing so, the Bank will then give the Debtors credit for the amounts obtained at the foreclosure sale, less the costs of said sale.

**Vacant 6.40 +/- Acre tract North Margin Old Monrovia Rd, Huntsville, Alabama**

22. Pursuant to §363 Debtor Bayport is also in possession of a 6.4 acre tract of real property located on the North Margin Old Monrovia Rd, Huntsville, Alabama 35806. See, K. Watson Affidavit.

23. Similar to the 3.37 acre tract, although the Debtors have been in possession of this 6.4 acre tract, they have not made any adequate protection payments to the Bank since the beginning of this case. See, K. Watson Affidavit.

24. Also similar to both the Aircraft and the 3.37 acre tract, Bayport does not have any equity in the 6.4 acre tract. Attached as Exhibit 12 is an appraisal of the 6.4 acre tract which was done in January, 2020. This appraisal shows that this tract had a fair market value of $934,000.

25. Therefore, even if the Bank gave the Debtors full credit against the Debt for the fair market value of the Aircraft and the 3.37 and 6.4 acre tracts of land, the resulting deficiency would be $170,772.99. This amount is calculated as follows:

| Debt | $ 2,593,772.99 |
|---|---|
| Aircraft | $ (950,000.00) |
| 3.37 ac. | $ (539,000.00) |
| 6.4 ac. | $ (934,000.00) |
|  | $ 170,772.99 |

26. Moreover, similar to the 3.37 acre tract, this 6.4 acre tract is not necessary for the Debtors reorganization.

27. Both the 3.37 acre tract and the 6.4 acre tract are raw land on which no substantial business

8

is conducted. See Exhibits 11 & 12. Although Bayport has not filed any operating statements, its Statement of Financial Affairs establishes that its only prior income is from the sale of land. [Doc. 13 at 14]. Hence, the sale of the raw land generates all of the gross income for this Debtor. It is also undisputed that both tracts are also for sale since this Court has previously granted the application by John Blue Realty LLC to be employed to sell this real estate. [See Doc. 45 Case No. 20-80471].

28. While the Bank has been advised by the Debtor and it intends to pursue a sale to the Huntsville Utilities, this sale does not change the math. Based on these facts, the Bank asserts that cause exists to lift the automatic stay under §362 in order to allow it to pursue its respective rights in this real property and otherwise protect its interests in its Collateral.

29. Alternatively, if the Court finds that the 3.37 acre tract, this 6.4 acre tract are necessary for the Debtor to reorganize, the Bank submits that cause exists to terminate or lift the stay as to these tracts because they are a single asset real estate as defined by §101(51B) of the Bankruptcy Code.

30. The Bankruptcy Code defines the term "single asset real estate" to mean real property constituting a single property or project (other than residential real property with fewer than 4 residential units) which generates substantially all of the gross income of the debtor, and on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto. Bankruptcy Code §101(51B). See, *In re Alvion Properties, Inc.,* 538 B.R. 527, 532 (Bankr. S.D. Ill. 2015).

31. Section § 362(d)(3) provides, in pertinent part, that after a notice and hearing, the court shall grant relief from the stay with respect to single asset real estate ("SARE") upon the later of 90 days after the entry of an order for relief or 30 days after the Court determines the property

9

Case 20-80495-CRJ11    Doc 182    Filed 11/13/20    Entered 11/13/20 09:26:26    Desc
Main Document    Page 9 of 14

is a single asset real estate; and the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed nor commenced making monthly payments to the creditor in an amount at least equal to the monthly interest payments at the non-default contract interest rate. See, *In re Alvion Properties, Inc.,* 538 B.R. at 532.

32. It is generally accepted that raw land or real property acquired and/or held for development falls within the definition of SARE. See, e.g., *In re Mountain Edge LLC*, No. 12-10835 T11, 2012 WL 4839784, at *3 (Bankr. D.N.M. Oct. 10, 2012). Also, the fact that the 3.7 acre tract and the 6.4 acre tract are separate tracts does not prevent it from being classified as a single asset real estate. See, *In re Pioneer Austin East Development I, LTD,* 2010 WL 2671732 at *3 (Bankr.N.D.Tex.2010)(eight parcels held for residential development was SARE); *In re Webb MTN, LLC*, No. 07-32016, 2008 WL 656271, at *4 (Bankr. E.D. Tenn. Mar. 6, 2008)(five separate parcels of real property acquired from different parties at different times constituted a SARE).

33. Determining whether multiple properties constitute a "single project" requires a finding that the properties are linked together in some fashion in a common plan or scheme involving their use. *In re Alvion Properties, Inc.,* 538 B.R. at 533 (citations omitted).

34. In this case, the common plan between these two tracts is that they are to be sold for development purposes to a third party. That is why the Debtor sought and obtained permission from this Court to employ John Blue Realty to market and sell this real estate. [See Doc. 45 Case No. 20-80471]. So it is clear that the Debtor is simply going to liquidate these tracts.

35. Hence the Bank is entitled to relief from the automatic stay in the event that the Debtor is

unable to pay monthly interest payments to it at the contract rate of 6% per annum. See Exhibit 2 Promissory Note. Monthly interest only payments on the Debt at 6% equates to $12,968.85 per month. See, K. Watson Affidavit. Given that the operating reports for Bayport show zero income, it is not reasonable to assume that this Debtor can pay this monthly amount to the Bank.

36. Accordingly, in the event that this Court finds that the Debtor either has equity in the 3.37 or the 6.4 acre tract or that either of these tracts are necessary for the Debtor to reorganize, the Bank respectfully submits that, after notice and hearing, the stay should be modified because these tracts are a single asset real estate project as defined by the Code.

**Byeluvyaseaya Limited -Yacht**

37. Rex either individually or through his companies, is also in possession of the luxury yacht known as Byeluvyaseaya. As discussed above this yacht was collateral for a $2,000,000 loan dated March 14, 2011. See Exhibit 1. See also, K. Watson Affidavit.

38. This luxury yacht was destroyed by Hurricane Dorian and was uninsured at the time of the hurricane. Therefore, the Bank's interest in this yacht has been significantly diminished. See, K. Watson Affidavit.

39. The Bank had the Yacht inspected after the hurricane. Based on the information obtained by Bank, the Yacht has a value of approximately $50,000. See K. Watson Affidavit.

40. As shown by Exhibit 7a, the Yacht is owned by "Byeluvyaseaya Limited" located at 9 Columbus Centre Pelican Drive, PO Box 805 Town Tortola British Virgin Islands.

41. While this entity is not in Chapter 11 it is believed to be solely owned by the Debtor Rex Rankin. See K. Watson Affidavit.

42. Therefore, out of an abundance of caution and a healthy respect for the scope of the automatic

11

stay, the Bank also seeks relief from the stay – to the extent it is applicable to this case through Rex in order to take possession of the Yacht and sell it.

43. Since the Yacht has been largely destroyed there is no equity in it and it certainly is not necessary for Rex to reorganize. Moreover, Rex has not offered the Bank any adequate protection payments. See, K. Watson Affidavit. Accordingly, cause exists under §362(d) of the Bankruptcy Code for the Bank to obtain relief from the stay so that it can protect its interests in this Yacht under applicable non-bankruptcy law.

**901 Main Street E. Hartselle, Alabama**

44. Pre-petition, Rex and Marty Beth borrowed the sum of $152,000 from the Bank. This debt matured on October 24, 2019 and all principal and accrued interest is due and owing. Presently Rex and Mary Beth owe the sum of $160,302.49 to the Bank under the terms of this debt ("Hartselle Debt"). See, K. Watson Affidavit.

45. The Hartselle Debt is secured by a real estate mortgage on certain real property commonly known as 901 Main Street E. Hartselle, Alabama 35640 and recorded in the probate records for Morgan County, Alabama ("Hartselle Property"). A copy of this mortgage is attached as Exhibit "9".

46. The Bank seeks relief from the automatic stay in order to foreclose upon the Hartselle Property. Similar to the collateral discussed above, the Debtors have not offered any adequate protection payments to the Bank for the use of the Hartselle Property.

47. Moreover, the Debtors do not have any equity in the Hartselle Property. As shown on the attached appraisal done in December, 2019 this real property only has a value of $85,000. See Exhibit 13. The total debt which encumbers the Hartselle Property is $160,302.49. See

12

K. Watson Affidavit.

48. Furthermore, the Hartselle Property is not necessary for the Debtor's reorganization. The Debtors do not live at the Hartselle Property.

49. For these reasons, the Bank is entitled to relief from the automatic stay in order to obtain possession of the Hartselle Property because the Debtors have no equity in this real property and it is not necessary for them to reorganize. As such, the Bank should be allowed to protect its interests in the Hartselle Property by pursuing its state law remedies.

## Conclusion

50. Based on the facts and argument presented herein, the Bank asserts that cause exists to lift the automatic stay under §362 so that it can take immediate action to protect its interests in the Collateral described herein. Even if the Bank gave the Debtors full credit against the Debt for the fair market value of the Aircraft, the 3.37 acre tract, the 6.4 acre tract, the Hartselle Property and the Yacht the resulting deficiency would be $35,772.99. See, K. Watson Affidavit. Furthermore, based on the foregoing, the Bank requests that this Court waive the fourteen (14) day "stay" in accordance with Fed. R. Bankr. P. 4001(a)(3).

WHEREFORE, Bryant Bank respectfully requests that this Court grant it relief from the automatic stay for the reasons stated herein, allow it to amend its previously filed proofs of claim to pursue its deficiency claims after it liquidates its collateral, and grant it such further and additional relief as to which it is justly entitled.

Respectfully submitted on this 13th day of November, 2020.

*/s/ Kevin D. Heard*
KEVIN D. HEARD

13

Case 20-80495-CRJ11   Doc 182   Filed 11/13/20   Entered 11/13/20 09:26:26   Desc
Main Document    Page 13 of 14

Of Counsel:
HEARD, ARY & DAURO, LLC
303 Williams Avenue
Park Plaza, Suite 921
Huntsville, Alabama 35801
Tel: (256) 535-0817
Fax: (256) 535-0818
kheard@heardlaw.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 13th day of November, I served a copy of the foregoing **Motion for Relief from Automatic Stay** on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**
Richard M. Blythe Richard_Blythe@alnba.uscourts.gov, courtmaildec@alnba.uscourts.gov
James Cameron james@jmcgville.com, rhonda@jmcgville.com
Charles Paul Davis pdavis@cpdlaw.com, lyoung@cpdlaw.com, jgrayson@cpdlaw.com, mbeach@cpdlaw.com
Jackson E. Duncan Jackson.duncan@mccalla.com, mccallaecf@ecf.courtdrive.com
Robert J. Landry Robert_landry@alnba.uscourts.gov, courtmailann@alnba.uscourts.gov
Tracy A. Marion TAM@lanierford.com, dfrancois@lanierford.com
Tazewell Shepard taze@ssmattorneys.com, janelle@ssmattorneys.com
Tazewell Taylor Shepard ty@ssmattorneys.com, janelle@ssmattorneys.com
Paul Joseph Spina pspina@spinalavell.com

**Notice will not be electronically mailed to:**
PRA Receivables Management LLC
PO Box 41021
Norfolk, VA 23541

James H. Richardson
Richardson Maples PC
301 East Homes Ave., Suite 100
Huntsville, AL 35801

                */s/ Kevin D. Heard*
                KEVIN D. HEARD