6000277105




# Government of The British Virgin Islands

## MERCHANT SHIPPING ACT 2001

### MORTGAGE OF A SHIP
To secure Account Current and Other Obligations

The mortgage reference No. (issued by the mortgagee) is: _____

NOTE: Please complete in BLOCK LETTERS

| SECTION 1: DETAILS OF THE SHIP | |
|---|---|
| Name of ship | BYELUVYASEAYA |
| Official number | |
| IMO number | XXE78115D606 |
| Number, year and port of registry | IN 2011 – ROAD HARBOUR, BVI |

| SECTION 2: THE MORTGAGE |
|---|
| Whereas there is |
| AN ACCOUNT CURRENT |
| |

*(State "an account current" or write in a short description)*

**Between**

| BYELUVYASEAYA LIMITED |
|---|
| 9 COLUMBUS CENTRE, PELICAN DRIVE, BOX 805 |
| ROAD TOWN, TORTOLA BVI VG-1110 |
| |

*~~as joint mortgagor(s)~~ (hereinafter called "the mortgagor")
(Give full name with place of business in respect of a company).*

and

| BRYANT BANK |
|---|
| PO BOX 46 |
| HUNTSVILLE, ALABAMA 35804 |
| |

*~~as joint mortgagee(s)~~ (hereinafter called "the mortgagee")
(Give full name with place of business in respect of a company).*

| Which account is set forth in and regulated by and subject as to repayment and other conditions by a promissory note/loan agreement dated 14TH March, 2011, a Deed of Covenants dated 14TH March, 2011, |
|---|
| Signed by theMortgagor in favor of the Mortgagee, all of which documents in each case as amended from time |
| to time are together hereinafter referred to as the "relevant documents" for the principal sum of |
| One Million (US Dollars) and No Cents ($1,000,000.00) |
| |

*(Describe fully the nature of the liabilities secured. You may refer to another document.)*
*\*Delete as necessary*



### SECTION 2: THE MORTGAGE (continued)

*Complete in respect of "account current":
Now * I/we the mortgagor in consideration of the advance made or to be made to *me/us by the mortgagee, bind *myself/ourselves to pay to the mortgagee the sums for the time being due on the security whether by way of principal interest or otherwise at the time(s) and in the manner mentioned above.

For the purpose of better securing to the mortgagee the *sums/obligation mentioned above. *I/we hereby mortgage to the mortgagee(s)    **SIXTY FOUR/SIXTY FOUR   64/64**           (figures and words)
Shares of which *I am/we are the owners in the ship described above and in its appurtenances.

Lastly, *I/we for *myself/ourselves, hereby declare that I/we have the power to mortgage in the manner aforesaid the above-mentioned shares and that they are free from encumbrances *save as appears by the registry of the above ship.

### COMPLETE IF THE MORTGAGOR IS A COMPANY

Executed by the mortgagor(s) as a deed on this

_____14TH_____ day of MARCH 2011 by:-

(a) the affixing of the common seal of the mortgagor in the presence of the following persons signing; or
(b) signing by the following persons;

Director _____[signature]_____
MARVIN REX RANKIN III
*Director/Secretary._____

(COMPANY SEAL)

Authorized Signatory _____          Authorized Signatory _____

Note: *In Scotland – signature may be by two directors: or by a director and the secretary of the company; or by any two persons authorized to sign and subscribe the documents on behalf of the company*

*Except in Scotland – signature may be by two directors: or by a director and a secretary of the company; If the common seal is affixed, any special requirements of the company's articles about signing must be complied with.*

### COMPLETE IF THE MORTGAGOR(S) IS/ARE ONE OR MORE INDIVIDUAL(S)

* Executed as a deed (in England or Wales)
* Signed (in Scotland)
* Signed, sealed, and delivered (in Northern Ireland)

on this _____ day of _____ 20 ____
by the following person(s) signing as mortgagor

Seal if executed in Northern Ireland

| Signature of mortgagor | | |
|---|---|---|
| Full name of witness(es) | | |
| Signature of witness(es) | | |
| Occupation of witness(es) | | |
| Address of witness(es) | | |

Note: In Scotland, two witnesses are required; elsewhere, one witness.

(REGISTRAR OF SHIPS, ROAD HARBOUR, 30 MAY 2011, TORTOLA, BRITISH VIRGIN ISLANDS stamp)

## SECTION 3: TRANSFER OF MORTGAGE

*I/we, the above-mentioned mortgagee, in consideration of

_____

*(Enter the sum of money or nature of the obligation).*

this day

_____

*(Enter "paid to *me/us," or narrative suitable to the obligation).*

by

_____

*(Give full name and address of the transferee, with the place of business in respect of a company)*
hereby transfer to *him/her/them the benefit of the within written security.
*Delete as necessary

### COMPLETE IF THE TRANSFEROR IS A COMPANY

Executed by the transferor as a deed on this
_____ day . of _____ 20 _____ by:-

**COMPANY SEAL**

(a) the affixing of the common seal of the transferor
    in the presence of the following persons signing; or
(b) signing by the following persons;

Director _____

*Director/Secretary _____

Authorised Signatory _____  * Authorised Signatory _____

Note: *In Scotland – signature may be by two directors: or by a director and the secretary of the company; or by any two persons authorized to sign and subscribe the documents on behalf of the company*

*Except in Scotland – signature may be by two directors: or by a director and a secretary of the company; If the common seal is affixed, any special requirements of the company's articles about signing must be complied with.*

### COMPLETE IF THE TRANSFEROR(S) IS/ARE ONE OR MORE INDIVIDUAL(S)

* Executed as a deed (in England or Wales)
* Signed (in Scotland)
* Signed, sealed, and delivered (in Northern Ireland)

Seal if executed in Northern Ireland

on this _____ day of _____ 20 _____
by the following person(s) signing as transferor

| Signature of transferor | | |
|---|---|---|
| Full name of witness(es) | | |
| Signature of witness(es) | | |
| Occupation of witness(es) | | |
| Address of witness(es) | | |

*Note: In Scotland, two witnesses are required; elsewhere, one witness.*

[Stamp: REGISTRAR OF SHIPS, ROAD HARBOUR, 3 0 MAY 2011, TORTOLA, BRITISH VIRGIN ISLANDS]

## SECTION 4: DISCHARGE OF MORTGAGE

*received by the within-mentioned mortgagee/transferee of the mortgage,

_(Enter" the sum of _____," or narrative suitable to the obligation)._

This within written security is now discharged.

*The within mentioned *mortgagee/transferee have agreed to discharge this within written security and it is therefore discharged.

### COMPLETE IF THE DISCHARGE IS GIVEN BY A COMPANY

Executed by the *mortgagee/transferee as a deed on this _____ day of _____ 20 _____ by:-

(a) the affixing of the common seal of the mortgagee/transferee in the presence of the following persons signing; or
(b) signing by the following persons;

Director _____

*Director/Secretary _____

. Authorised Signatory _____   * Authorised Signatory _____

**COMPANY SEAL**

Note: _In Scotland – signature may be by two directors: or by a director and the secretary of the company; or by any two persons authorized to sign and subscribe the documents on behalf of the company_

_Except in Scotland – signature may be by two directors: or by a director and a secretary of the company; If the common seal is affixed, any special requirements of the company's articles about signing must be complied with._

_____ (date)
_____ (time)

### COMPLETE IF THE DISCHARGE IS GIVEN BY ONE OR MORE INDIVIDUALS

* Executed as a deed (in England or Wales)
* Signed (in Scotland)
* Signed, sealed, and delivered (in Northern Ireland)

on this _____ day of _____ 20 _____
by the following person(s) signing as mortgagee(s)/transferee(s)

| Signature of mortgagee/transferee | | |
|---|---|---|
| Full name of witness(es) | | |
| Signature of witness(es) | | |
| Occupation of witness(es) | | |
| Address of witness(es) | | |

Seal if executed in Northern Ireland

Note: In Scotland, two witnesses are required; elsewhere, one witness.

**FOR OFFICIAL USE ONLY:**
Discharge in Register made

**FOR OFFICIAL USE ONLY:**
Entry in Register made 30 May 2011 (date)   _____ Registrar of Shipping
                       3:00 pm (time)   Ronald V. Danluga, Pasea Estate, Tortola, B.V.I.

Please send this completed form and relevant fee to the Registrar
Virgin Islands Shipping Registry
Sebastian Building, Administration Building
Road Town, Tortola
British Virgin Islands
Tel. (284) 468-2902/2903 Fax. (284) 468-2913

[Stamp: REGISTRAR OF SHIPS MAY 30 2011 BRITISH VIRGIN ISLANDS]

THIS DEED OF COVENANTS is made the 14th day of March 2011.

BETWEEN: **BYELUVYASEAYA LIMITED**
9 COLUMBUS CENTRE, PELICAN DRIVE
PO BOX 805
ROAD TOWN, TORTOLA BVI VG1110    (the "Owner" or the "Borrower")

AND: **BRYANT BANK**
PO BOX 46
HUNTSVILLE, ALABAMA 35804 USA    (the Mortgagee")

WHEREAS

**LOAN TO OWNER**

(1) The Owner is the sole, absolute, legal and beneficial owner of 64 shares in the ship described in Clause 1 (A)(xvii) hereof (the "Ship")

(2) Following execution of a Loan Agreement dated 14th day of **March, 2011** and made between the Borrower and the Mortgagee, the Borrower has agreed to secure the repayment by the Borrower to the Mortgagee of a loan by the Mortgagee to the Borrower.

(3) The said Loan Agreement provides (inter alia) that the Borrower should execute in favor of the Mortgagee a Mortgage of the Ship to secure (inter alia) all sums of money from time to time owing to the Mortgagee under the said Loan Agreement.

(4) There has contemporaneously with the execution of this Deed been executed by the Borrower in favor of the Mortgagee a Statutory Mortgage constituting a first priority Mortgage of 64 shares of the said Ship.

(5) This Deed is supplemental to the Mortgage aforesaid and to the security thereby created.

**NOW THIS DEED WITNESSETH AND IT IS HEREBY AGREED as follows:**

**DEFINITIONS**

1. (A) In this Deed unless the context otherwise requires:

    (i) "Approved Brokers" means such firm of insurance brokers, appointed by the Owner, as may from time to time be approved in writing by the Mortgagee for the purposes of this Deed;

    (ii) "US$" means the lawful currency of the United States of America;

    (iii) "Earnings" means all monies whatsoever from time to time due or payable to the Owner during the Security Period arising out of the use or operation of the Ship including (but without limiting the generality of the foregoing) all freight, hire and passage monies, compensation in the event of requisition of the Ship for hire,

-1-

/ _BR_ initial

remuneration for salvage and towage services, demurrage and detention monies, and damages for breach (or payments for variation or termination) of any charter party or other contract for the employment of the Ship and any sums recoverable under any loss of earnings insurance;

(iv) "Expenses" means the aggregate at any relevant time (to the extent that the same have not been received or recovered by the Mortgagee or any Receiver) of:

    (a) all losses, liabilities, costs, charges, expenses and outgoings of whatever nature (including without limitation) taxes, stamp duty, registration fees and insurance premiums (suffered, incurred or paid by the Mortgagee or any Receiver in connection with the exercise of the powers referred to in this Deed or otherwise) payable by the Owner in accordance with Clause 13; and

    (b) interest on all such losses, liabilities, charges, costs, expenses and outgoings from the date on which the same was suffered, incurred or paid by the Mortgagee or any Receiver until the date of receipt or the recovery thereof (whether before or after judgment) at a rate per annum equal to the aggregate of one and one quarter percent and the cost to the Mortgagee or such Receiver (as the case may be) of funding the amount in question (as conclusively certified by the Mortgagee or such Receiver as the case may be);

(v) "Insurances" means all policies and contracts of insurance (which expression includes all entries of the Ship in a protection and indemnify or war risks association) from time to time during the Security Period taken out or entered into by or for the benefit of the Owner in respect of the Ship, her Earnings or otherwise howsoever in connection with the Ship and all benefits thereof (including claims of whatsoever nature and return of premiums);

(vi) "Loan: means the principal amount advanced by the Mortgagee to the Borrower pursuant to the Loan Agreement or, as the context may require, the amount thereof for the time being outstanding;

(vii) "Loss Payable Clauses" means the provisions regulating the manner of payment of sums receivable under the Insurances which are to be incorporated in the relevant insurance documents;

(viii) "Mortgage" means the statutory mortgage mentioned in Recital (3) hereto;

(ix) "Mortgaged Premises" means;

    (a) the Ship,

    (b) the Insurance,

    (c) the Earnings, and

    (d) any Requisition Compensation.

Case 20-80495-CRJ11    Doc 182-7    Filed 11/13/20    Entered 11/13/20 09:26:26    Desc
Exhibit Exhibit 7    Page 6 of 20

(x)     "Loan Agreement" means the Loan Agreement as defined in the Recitals hereto;

(xi)    "Outstanding Indebtedness" means the aggregate of the Loan, all interest accrued and accruing thereon, the Expenses and all other sums of money from time to time owing to the Mortgagee (whether the same shall be due and payable or not) under the Security Documents or any of them;

(xii)   "Person" includes any body of persons corporate or unincorporate;

(xiii)  "Receiver" means any receiver and/or manager appointed pursuant to Clause 9;

(xiv)   "Requisition Compensation" means all monies or other compensation from time to time payable during the Security Period by reason of requisition for title or other compulsory acquisition of the Ship otherwise than by requisition for hire;

(xv)    "Security Documents" means the Loan Agreement, this Deed, the Mortgage, and any other document or instrument from time to time executed as security for the Outstanding Indebtedness or any part thereof;

(xvi)   "Security Period" means the period terminating upon payment of all monies payable under the Security Documents and the discharge of all other obligations secured thereby;

(xvii)  "Ship" means the **2006 MARLOW EXPLORER YACHT bearing the Hull Identification Number of XXE78115D606, a Motor Yacht**, registered at the Port of **ROAD HARBOUR, British Virgin Islands, Official Number TBA** and includes any share or interest therein and her engines, machinery, boats, tackle, outfit equipment, spare gear, fuel, consumable or other stores belonging and appurtenances whether on board or ashore and whether now owned or hereinafter acquired;

(xviii) "Total Loss" means:

   (a)  actual or constructive or compromised or arranged total loss of the ship,

   (b)  requisition for title or other compulsory acquisition of the Ship otherwise than by requisition for hire,

   (c)  capture seizure arrest detention or confiscation of the Ship by any government or by persons acting or purporting to act on behalf of any government unless the Ship be released and restored to the Owner from such capture, seizure, arrest or detention within thirty (30) days after the occurrence thereof.

(B)     In the Mortgage:

   (i)  references to "Interest" shall be construed as references to interest covenanted to be paid in accordance with Clause 3, any interest payable by or recoverable from the Owner under Clauses 5(O) and 8(G) and interest specified in paragraph (b) of the definition of "Expenses" in Clause 1 (A)(iv);

-3-

(ii) references to "Principal" shall be construed as references to all other sums of money for the time being comprised within the Outstanding Indebtedness;

(iii) the expression "All Sums for the time being owing to the Mortgagee" means the whole of the Outstanding Indebtedness.

(C) This Deed shall read together with the Loan Agreement but in case of any conflict between the two instruments, the provisions of this Deed shall prevail.

(D) In this Deed, unless the context otherwise requires:

(i) references to Clauses and Schedules are to be construed as references to clauses of, and schedules to, this Deed and references to this Deed include its Schedules;

(ii) references to (or to any specified provisions of) this Deed or any other document shall be construed as reference to this Deed, that provision or that document as in force for the time being and as amended in accordance with the terms thereof, or, as the case may be, with the Agreement of the relevant parties and (where such consent is, by the term of this Deed or the relevant document, required to be obtained as a condition to such amendment being permitted) the prior written consent of the Mortgagee;

(iii) words importing the plural shall include the singular and vice versa; and

(iv) references to a person shall be construed as references to an individual, firm, company, corporation, or unincorporated body of persons or any state or any agency thereof.

REPRESENTATIONS AND WARRANTIES

2. The Owner hereby represents and warrants to the Mortgagee that:

(i) It is the sole, absolute, legal and beneficial owner of the Ship.

(ii) The Ship is not subject to any charter which, if entered into after the date of this Deed, would have required the consent of the Mortgagee under Clause 5 (M) and there is no existing agreement or arrangement whereby the Earnings may be shared with any other person.

(iii) Neither the Mortgaged Premises nor any part thereof is subject to any mortgage, charge, assignment, or other encumbrance save as constituted by the Mortgage and this Deed or otherwise permitted by the terms of this Deed.

**SECURITY**

**3. IT IS DECLARED AND AGREED:**

(A) That the security created by this Deed and the other Security Documents shall be held by the

-4-

_____ / _RK_ initial

REGISTRAR OF SHIPS
ROAD HARBOUR
3 0 MAY 2011
TORTOLA

Mortgagee as continuing security for the payment of the Outstanding Indebtedness and that the security so created shall not be satisfied by any intermediate payment or satisfaction or any part of the amount hereby and thereby secured (or by any settlement of accounts between the Borrower and the Mortgagee) and that the security so created shall be in addition to and shall not in any way be prejudiced or affected by any collateral or other security now or hereafter held by the Mortgagee for all or any part of the monies hereby and thereby secured and may be enforced by the Mortgagee without prior recourse to any such other security or to any other surety and that every power and remedy given to the Mortgagee hereunder shall be an addition to and not a limitation of any and every other power or remedy vested in the Mortgagee under any other of the Security Documents and that all the powers so vested in the Mortgage may be exercised from time to time and as often as the Mortgagee may deem expedient.

(B) That the Security created by this Deed and the other Security Documents shall not be impaired affected or discharged by reason of any time or other indulgence granted by the Mortgagee to the Borrower or any other party thereto or any forbearance (whether as to payment time performance or otherwise howsoever) which might but for this provision have any such effect or by reason of any variation in the terms of any of the Security Documents or by reason of the unenforceability, invalidity or termination of, or any irregularity in any of the Security Documents or the execution thereof by the Borrower or any other party thereto, or any deficiency in the power of the Borrower, or any other party thereto to enter into and perform its obligations thereunder and should any obligation or purported obligation of the Borrower or any such other party which if enforceable or valid or continuing would be secured by this Deed and the other Security Documents be or become wholly or in part unenforceable or invalid or terminated for any reason whatsoever the Owner will keep the Mortgagee fully indemnified against any loss suffered by the Mortgagee as a result of any failure by the Borrower OR such other party to perform any such obligation or purported obligation.

(C) That until the Outstanding Indebtedness has been paid discharged and satisfied in full (which expression shall not embrace payment of a dividend in liquidation or bankruptcy of less than 100%) and notwithstanding that the security created by this Deed and the other Security Documents may have been realized the Owner waives all rights of subrogation and agrees not to demand or accept repayment in whole or in part of any loans or advances at any time owing to the Owner from the Borrower or to demand or accept any security in respect thereof or to assign the same or charge thesame as security or take any step to enforce any rights against the Borrower or to claim or prove in competition with the Mortgagee or have the benefit of any share in any payment or composition from the Borrower or any other person or in any other guarantee or security now or hereafter held by the Mortgagee.

(D) Any money received by virtue of or in connection with the security created by this Deed and the other Security Documents may be placed to the credit of a suspense account with a view to preserving the rights of the Mortgagee to prove for the whole of the Outstanding Indebtedness against the Borrower in the event of any proceedings in or analogous to liquidation composition or arrangement.

(E) Any release, discharge, or settlement between the Owner and the Mortgagee shall be conditional upon no security disposition or payment to the Mortgagee by the Borrower, the Owner, or any other person being avoided or reduced pursuant to any provisions or enactment's relating to bankruptcy liquidation or insolvency.

-5-

## MORTGAGE AND ASSIGNMENT OF THE MORTGAGED PREMISES

4. By way of security for payment of the Outstanding Indebtedness THE OWNER as BENEFICIAL OWNER HEREBY MORTGAGES AND CHARGES to and in favor of the Mortgagee all its interest, rights and title present and future in and to the Mortgaged Premises and without prejudice to the generality of the foregoing THE OWNER HEREBY ASSIGNS AND AGREES to assign to the Mortgagee all its rights, title and interest in and to the Earnings, the Insurances and any Requisition Compensation and all its benefits and interests present and future therein PROVIDED HOWEVER THAT:

   (A) any sums recoverable in respect of the Insurances shall (unless and until there shall happen any of the events specified in Clause 7 hereof whereupon all insurance recoveries shall be receivable by the Mortgagee in accordance with Clause 8(C) hereof) be payable as follows:

   (a) There shall be paid to the Mortgagee any and every sum recoverable under the Insurances against fire and usual marine risks and war risks in respect of a Total Loss and any and every sum recoverable under such insurances in respect of a major casualty (that is to say any casualty in respect whereof the claim or the aggregate of the claims exceeds US $20,000 inclusive of any deductible) but so that the insurance monies received by the Mortgagee in respect of any such major casualty shall be paid over to the Owner upon the Owner furnishing evidence satisfactory to the Mortgagee that all loss and damage resulting from the casualty has been properly made good and repaired and that all repair accounts and other liabilities whatsoever in connection with the casualty have been fully paid and discharged by the Owner and that the insurers with whom the fire and usual marine risks insurances are effected may in the case of a major casualty and with the previous consent in writing of the Mortgagee make payment on account of repairs in the course of being effected;

   (b) All other sums recoverable in respect of the Insurances against fire and usual marine risks and war risks shall be paid to the Owner and shall be applied by it for the purpose of making good the loss and fully repairing all damage in respect whereof the insurance monies shall have been received.

   (B) The Earnings shall be payable to such account of the Owner with the Mortgagee as the Mortgagee may by written instrument determine or to any such other account of the Owner as the Mortgagee shall from time to time so determine and shall be at the disposal of the Owner until such time as the Mortgagee shall direct to the contrary, whereupon the Owner shall forthwith, and the Mortgagee may at any time thereafter, instruct the persons from whom the Earnings are then payable to pay the same to the Mortgagee or as it may direct and any Earnings then in the hands of the Owner's brokers or other agents shall be deemed to have been received by them for the use and on behalf of the Mortgagee.

   (C) Upon payment and discharge in full to the satisfaction of the Mortgagee of the Outstanding Indebtedness the Mortgagee shall, at the request and cost of the Owner, re-assign the Earnings, the Insurances and any Requisition Compensation to the Owner or as it may direct.

-6-

/ _initial_

## COVENANTS

5. THE OWNER COVENANTS with the Mortgagee AND UNDERTAKES throughout the Security Period:

   (A) (i) To insure and keep the Ship insured at the expense of the Owner or if so required by the Mortgagee (but without liability on the part of the Mortgagee for premiums or calls) in the joint names of the Owner and the Mortgagee:

   (a) against fire and usual marine risks (including excess risks) and war risks on an agreed value basis is such amounts (but not in any event less than whichever shall be the greater of the market value of the Ship for the time being and 120% of the Loan) and upon such terms as shall from time to time be approved in writing by the Mortgagee;

   (b) against protection and indemnity risks for the full value and tonnage of the Ship and upon such terms as shall from time to time be approved in writing by the Mortgagee;

   (c) against loss of Earnings in such amounts and upon such terms as shall from time to time be approved in writing by the Mortgagee and if and when so requested by the Mortgagee to effect and maintain in the name of the Mortgagee but at the expense of the Owner, a Mortgagee's interest insurance on the Ship in an amount equivalent to 100% of the Loan (or such lesser amount as may be agreed by the Mortgagee) and upon such terms as shall from time to time be approved in writing by the Mortgagee;

   (ii) To effect the Insurances aforesaid (a) in such amounts and upon such terms as shall from time to time be approved by the Mortgagee (b) through the Approved Brokers and with such insurance companies and/or underwriters as shall from time to time be approved in writing by the Mortgagee;

   (iii) At least fourteen (14) days before the relevant policies, contracts or entries expire to notify the Mortgagee of the names of the brokers and/or entities proposed to be employed by the Owner for the purposes of the renewal of the Insurance and of the amounts in which such insurances are proposed to be renewed and the risks to be covered and, subject to compliance with any requirements of the Mortgagee pursuant to this Clause, to procure that appropriate instructions for the renewal of such insurances on the terms so specified are given to the Approved Brokers; and to renew all such Insurances at least seven (7) days before the relevant policies, contracts or entries expire and procure that the Approved Brokers will at least seven (7) days before such expiry (or within such shorter period as the Mortgagee may from time to time agree) confirm in writing to the Mortgagee as and when such renewals have been effected in accordance with the instructions so given;

   (iv) Punctually to pay all premiums, calls, contributions or other sums payable in respect of all such Insurances and to produce all relevant receipts or other evidence of payment when so required by the Mortgagee;

   (v) To procure that the interest of the Mortgagee shall be duly endorsed upon all slips, cover notes, policies, certificates or entry or other instruments of insurance issued or to be issued in connection with the Insurances aforesaid;

-7-

(vi) To do all things necessary and provide all documents, evidence and information to enable the Mortgagee to collect and recover any monies which shall at any time become due in respect of the Insurances;

(vii) If so requested by the Mortgagee, but at a cost to the Owner, to furnish the Mortgagee with a detailed report signed by an independent firm of marine insurance brokers appointed by the Mortgagee dealing with the insurances maintained on the Ship and stating the opinion of such firm as to the adequacy thereof;

(viii) To deposit with the Approved Brokers (or procure the deposit of) all slips, cover notes, policies, certificates of entry and other instruments of insurance from time to time issued in connection with such of the Insurances referred to in Clause 5 (A) (i) as are effected through the Approved Brokers and procure that the interest of the Mortgagee shall be endorsed thereon by incorporation of a Loss Payable Clause and by means of a Notice of Assignment (signed by the Owner) in such form as may from time to time be agreed in writing by the Mortgagee and that the Mortgagee shall be furnished with pro forma copies thereof and a letter or letters of undertaking from the Approved Brokers in such form as shall from time to time be reasonably required by the Mortgagee;

(ix) Not to employ the Ship or suffer the Ship to be employed otherwise thank in conformity with the terms of the Insurances (including any warranties express or implied therein) without first obtaining the consent to such employment of the insurers and complying with such requirements as to extra premium or otherwise as the insurers may prescribe;

(x) To apply all such sums receivable in respect of the Insurances as are paid to the Owner in accordance with proviso (A) (b) to Clause 4 hereof for the purpose of making good the loss and fully repairing all damages in respect whereof the insurance monies shall have been received.

(B) To keep the Ship registered at the Port of **Road Harbour, BVI** and not do or suffer to be done anything or omit to do anything whereby such registration may be forfeited or imperiled.

(C) Not without the previous consent in writing of the Mortgagee to:

(i) make any modification to the Ship which would involve material alteration of her structure type or performance characteristics or could reduce her value;

(ii) remove any material part of the Ship or any equipment the value of which is such that its removal from the Ship would materially reduce the value of the Ship without replacing the same with the equivalent part or equipment owned by the Owner free from encumbrances; or

(iii) install on the Ship any equipment owned by a third party which cannot be removed without causing damage to the structure or fabric of the Ship.

(D) To keep the Ship in a good and efficient state of repair and so as to comply with the provisions of the Merchant Shipping Acts and other regulations and requirements (statutory or otherwise) from time to time applicable to vessel registered at **Road Harbour, BVI** and to procure that all repairs to or

-8-

replacement of any damaged work or lost parts or equipment be effected in such manner (both as regards workmanship and quality of materials) as not to diminish the value of the Ship and to maintain the present class of Ship.

(E) To permit the Mortgagee by surveyors or other persons appointed by it for such purpose to board the Ship at all reasonable times for the purpose of inspecting her condition or for the purpose of satisfying themselves in regard to proposed or executed repairs and to afford all proper facilities for such inspections and to submit the Ship to such periodical and other surveys required for classification purposes or otherwise and to supply to the Mortgagee copies of all survey reports issued in respect thereof.

(F) To promptly pay and discharge all debts, damages, liabilities and outgoings whatsoever, which have given or may give rise to maritime statutory or possessory liens on or claims enforceable against the Ship and in the event or arrest of the Ship pursuant to legal process or purported legal process or in the event of her detention in exercise or purported exercise of any such lien or claim as aforesaid to procure the release of the Ship from such arrest or detention forthwith, upon receiving notice thereof by providing bail or procuring the provision of security or otherwise as the circumstances may require.

(G) Not to employ the Ship or suffer her employment is any trade or business which is forbidden by International Law or which is otherwise illicit or unlawful under the law of any relevant jurisdiction or in carrying illicit or prohibited goods or in any manner whatsoever which may render her liable to condemnation in a Prize Court or to destruction, seizure, confiscation, penalty, or sanctions and in the event of hostilities in any part of the world (whether war be declared or not) nor to employ the Ship or suffer her employment in carrying any contraband goods or enter or trade to any zone which is declared a war zone by any Government, or by the Insurers unless the Mortgagee shall first have given its consent thereto in writing and there shall have been affected by the Owner and at its expense such special insurance coverage as the Mortgagee may require.

(H) Promptly to furnish to the Mortgagee all such information as it may from time to time require regarding the Ship, her position, and copies of all charters and other contracts for her employment or otherwise howsoever concerning her.

(I) To notify the Mortgagee forthwith by telex or telecopy of:

    (i) any accident to the Ship requiring repairs the cost of which will or is likely to exceed US $20,000 (or the equivalent in any other currency);

    (ii) any occurrence in consequence whereof the Ship has or may become a Total Loss;

    (iii) any requirement or recommendation made by any insurer or classification society or by any competent authority which is not immediately complied with;

    (iv) any arrest of the Ship or any exercise or purported exercise of any lien on the Ship or the Earnings or any part thereof;

    (v) any petition or notice of a meeting to consider any resolution to wind up the Owner.

/ *[initial]*

(J) Promptly to pay all tolls, dues, and other outgoings whatsoever in respect to the Ship and to keep proper books of account in respect to the Ship and her Earnings, and, as when the Mortgagee may so require, to make such books available for inspection on behalf of the Mortgagee and to furnish satisfactory evidence that the wages and allotments of the Master and Crew are being regularly paid.

(K) Not to, or purport to, mortgage, charge, or otherwise assign the Ship or other part of the Mortgaged Premises, or to suffer the creation of any such mortgage charter, or assignment, as aforesaid to, or in favor of any person other than the Mortgagee.

(L) Not without the previous consent in writing of the Mortgagee (and then only subject to such terms as the Mortgagee may impose) to sell, agree to sell, or otherwise dispose of the Ship or any share or interest therein.

(M) Not without the previous written consent of the Mortgagee (and then only subject to such conditions as the Mortgagee may impose) to let the Ship.

  (I) on demise charter for any period;

  (ii) by any time or consecutive voyage charter for a term which exceeds or which by virtue of any optional extensions therein contained may exceed thirteen month's duration;

  (iii) on terms whereby more than two (2) months' hire (or the equivalent) is payable in advance;

  (iv) below the market rate prevailing at the time when the Ship is fixed.

(N) Not without the previous consent in writing of the Mortgagee to put the Ship into the possession of any person for the purpose of work being done upon her in an amount exceeding or likely to exceed One Thousand Dollars ($1,000) US, (or the equivalent in any other currency) unless such person shall first have given to the Mortgagee and in terms satisfactory to it a written undertaking not to exercise any lien on the Ship for the cost of such work or otherwise.

(O) To pay to the Mortgagee on demand all monies whatsoever which the Mortgagee shall or may expend by, put to, or become liable for in or about the protection, maintenance, or enforcement of the security created by this Deed and the other Security Documents or in or about the exercise by the Mortgagee of any of the powers vested in it hereunder or thereunder and to pay interest thereon at the rate prescribed in the Loan Agreement from the date whereon such expense or liability was incurred by the Mortgagee, until the date of payment, whether before, or after, any relevant judgment.

(P) Not without the prior written consent of the Mortgagee (and then only subject to such conditions as the Mortgagee may impose), to enter into any agreement or arrangement whereby the Earnings may be shared with any other person.

(Q) To procure that the Earnings are paid to the Mortgagee at all times after the Mortgagee shall have directed, pursuant to Clause 4 (B) that the same shall no longer be receivable by the Owner, and that any Earnings which at the time such direction is given, are in the hands of the Owner's agents, are duly accounted for and paid over to the Mortgagee forthwith on demand.

-10-

## POWERS OF MORTGAGEE TO PROTECT SECURITY AND REMEDY DEFAULTS

6. (A) The Mortgagee shall without prejudice to its other rights, remedies and powers, hereunder be entitled (but not bound) at any time, and as often as may be necessary, to take any such action as it may it its reasonable discretion, think fit for the purpose of protecting or maintaining the security created by this Deed, and the other Security Documents, and all Expenses so incurred by the Mortgagee, in or about the protection of the security, shall be repayable to it by the Owner on demand.

   (B) Without prejudice to the generality of the foregoing:

   (i) in the event that the Owner does not comply with the provisions of Clause 5 (A) hereof, or any of them the Mortgagee shall be at liberty to effect and thereafter to maintain all such Insurances upon the Ship as in its discretion it may think fit;

   (ii) in the event that the Owner does not comply with the provisions of Clause 5 (D) hereof the Mortgagee shall be at liberty to arrange for the carrying out of such repairs as it deems expedient or necessary;

   (iii) in the event that the Owner does not comply with the provisions of Clause 5(F) hereof, or any of them, the Mortgagee shall be at liberty to pay and discharge all such debts, damages, and liabilities, are therein mentioned and/or to take any such measures as it deems expedient or necessary for the purpose of securing the release of the Ship and the Expenses attributable to the exercise by the Mortgagee of any such powers shall be repayable upon demand.

## EVENTS OF DEFAULT

Upon the happening of any of the following events, the security created by this Deed and the Mortgage shall immediately become enforceable:

(A) Upon the loan becoming due and payable or any sum of money payable under the Security Documents, or any of them are not paid on the date therein stipulated for payment of the same or in the case of sums expressed to be payable on demand within three (3) days of such demand being made.

(B) The Owner and the Borrower or either of them or any of the other parties thereto, (other than the Mortgagee) do not observe or perform any of the covenants or obligations on their respective parts contained in the Security Documents.

(C) A petition is filed or an order is made or an effective resolution is passed for the winding up of the Owner (otherwise than for the purpose of any such reconstruction or amalgamation as shall have been previously approved in writing by the Mortgagee) or a receiver is appointed of the undertaking or property of the Owner of the Owner suspends payment or ceased to carry on its business or makes special arrangements or composition with its creditors.

(D) The Ship becomes a Total Loss.

-11-

/ _RR_ initial

[Stamp: REGISTRAR OF SHIPS, ROAD HARBOUR, 3 0 MAY 2011, TORTOLA, BRITISH VIRGIN ISLANDS]

Case 20-80495-CRJ11    Doc 182-7    Filed 11/13/20    Entered 11/13/20 09:26:26    Desc Exhibit Exhibit 7    Page 15 of 20

(E)  Anything is done or suffered or omitted to be done by the Owner or the Borrower or any other party to the Security Documents (other than the Mortgagee) which in the reasonable opinion of the Mortgagee may imperil the security created by the Security Documents.

(F)  Any of the circumstances set forth in sub-clause (C) above arises (mutatis mutandis) in relation to the Borrower.

## POWERS OF MORTGAGEE ON EVENT OF DEFAULT

8.  Upon the happening of any of the events specified in Clause 7 hereof the Mortgagee shall become forthwith entitled as and when it may see fit to put into force and to exercise all the powers possessed by ii as mortgagee and chargee of the Mortgaged Premises and in particular (without limiting the generality of the foregoing):

    (A)  To take possession of the Ship.

    (B)  To require that all policies contracts certificates of entry and other records relating to the Insurances (including details of and correspondence concerning outstanding claims) be forthwith delivered to such brokers as the Mortgagee may nominate.

    (C)  To collect recover compromise and give a good discharge for all claims then outstanding or thereafter arising under the Insurances or any of them and to take over or institute (if necessary using the name of the Owner) all such proceedings in connection therewith as the Mortgagee in it's absolute discretion thinks fit and to permit the brokers through whom collection or recovery is effected to charge the usual brokerage therefor.

    (D)  To discharge compound release or compromise claims in resect of the Ship which have given or may give rise to any charge or lien on the Ship or which are or may be enforceable by proceedings against the Ship.

    (E)  To sell the Ship or any share therein with or without notice to the Owner and with or without the benefit of any charter party by public auction or private contract at such place and upon such terms as the Mortgagee in its absolute discretion may determine with power to postpone any such sale and without being answerable for any loss occasioned by such sale or resulting from postponement thereof.

    (F)  Pending sale of the Ship to manage, insure, maintain and repair the ship and to employ sail or lay up the Ship in such manner and for such period as the Mortgagee in its absolute discretion deems expedient and for the purposes aforesaid the Mortgagee shall Be entitled to so all acts and things incidental or conductive thereto and in particularly (but without prejudice to the generality of the foregoing) to enter such arrangements respecting the Ship, her insurance, maintenance, repair, classification and employment in all respects as if the Mortgagee were the owner of the Ship but without being responsible for any loss incurred as a result of the Mortgagee doing or omitting to do any such acts or things as aforesaid.

    (G)  To recover from the Owner on demand any such losses as may be incurred by the Mortgagee in

-12-

or about the exercise of the power vested in the Mortgagee under sub-clause (F) above with the interest thereon at the rate provided for in Mortgagee until the date of payment whether before or after any relevant judgment

(H) To recover from the Owner on demand all Expenses incurred by the Mortgagee in or about or incidental to the exercise by it of any of the powers aforesaid.

**PROVIDED ALWAYS** that upon any sale of the Ship or any share therein by the Mortgagee pursuant to sub-clause (E) above or by the Receiver pursuant to Clause 9 (A) below the purchaser shall not be bound to see or enquire whether the Mortgagee's power of sale has arisen in the manner herein provided and the sale shall be deemed to be within the power of the Mortgagee (or the Receiver, as the case may be) and the receipt of the Mortgagee (or the Receiver, as the case may be) for the purchase money shall effectively discharge the purchaser who shall not be concerned with the manner of application of the proceeds of sale or be in any way answerable therefor.

### RECEIVER

9. (A) At any time after the Loan shall have become due and payable, the Mortgagee shall be entitled (but not bound) by writing under its common seal or under the hand of any director of the Mortgagee to appoint any person or persons to be a receiver and/or manager of the Mortgaged Premises or any part thereof (with power to authorize any joint receiver and/or manager to exercise any power independently of any other joint receiver and/or manager) and may from time to time to fix his remuneration or remove any receiver and/or manager so appointed shall be responsible for his acts or defaults and for his remuneration and such receiver or manager so appointed shall have all powers to do or omit to do anything which the Owner could do or omit to do in relation to the Mortgaged Premises or any part thereof and in particular (but without prejudice to the generality of the foregoing) any such receiver and/or manager may exercise all the powers and discretion's conferred on the Mortgagee by the Mortgage and this Deed.

(B) Any Receiver shall be entitled to remuneration appropriate to the work and responsibilities involved upon the basis of charging from time to time adopted by the Receiver in accordance with the current practice of his firm.

(C) Neither the Mortgagee nor any receiver shall be liable as mortgagee in possession of all or any of the Mortgaged Premises to account or be liable for any loss on the realization or for any neglect or default of any nature whatsoever in connection therewith for which a Mortgagee in possession may be liable as such.

### APPLICATION OF MONEYS

10. (A) All monies received by the Mortgagee in respect of:

   (i) Sale of the Ship or any share therein;

   (ii) Recovery under the Insurances (other than any such sum or sums as may have been received by the Mortgagee in accordance with proviso (A) (a) to Clause 4 hereof in respect of a major casualty as therein defined and which has or have been paid to the owner as therein provided); and

Case 20-80495-CRJ11 Doc 182-7 Filed 11/13/20 Entered 11/13/20 09:26:26 Desc Exhibit Exhibit 7 Page 17 of 20

(iii) Requisition Compensation shall be held by it upon trust in the first place to pay or make good all Expenses as may have been incurred by the Mortgagee in or about or incidental to the exercise by the Mortgagee of the powers specified or otherwise referred to in Clause 8 hereof or any of them and the balance shall be applied in manner following:

**FIRST** in or towards payment of any interest accrued and owing by the Owner in respect of the Outstanding Indebtedness;

**SECOND** in or towards payment of any amounts owing by the Borrower in respect of the Outstanding Indebtedness;

**THIRD** in or towards payment of any balance of the Outstanding Indebtedness;

**FOURTH** the surplus (if any) shall be paid to the Owner or such other person as may for the time being be entitled thereto.

(B) Any monies received by the Mortgagee or any Receiver in respect of the Earnings or in respect of the employment of the Ship pursuant to the provisions of Clause 8 shall be applied by the Mortgagee or the Receiver in the manner specified in Clause 10 (A).

**CONTINUING SECURITY**

11. (A) No delay or omission of the Mortgagee to exercise any right or power vested in it under the Security Documents or any of them shall impair such right or power or be construed as a waiver of or as acquiescence in any default by the Owner or the Borrower and no express waiver given by the Mortgagee in relation to any default by the Owner or by the Borrower or breach by the Owner or by the Borrower of any of its obligations under this Deed shall prejudice the rights of the Mortgagee under the Mortgage and/or this Deed arising from any subsequent default or breach ( whether or not such subsequent default or breach is of a nature different from that previous default or breach) nor shall the giving by the Mortgagee of any consent to the doing of act any which, by the terms hereof, require the consent of the Mortgagee prejudice the right of the Mortgagee to give or withhold as it sees fit its consent to the doing of any other similar act. The remedies provided in the Security Documents are cumulative and not exclusive of any remedies provided by law.

(B) The Mortgagee shall not be obliged to make any inquiry as to the nature or sufficiency of any payment received by it hereunder or to make any claim or to take any action to collect any monies hereby assigned or to enforce any rights and benefits hereby assigned to the Mortgagee or to which the Mortgagee may at any time be entitled hereunder.

(C) The security created by the Mortgage and this Deed shall be a continuing security for the payment of the Outstanding Indebtedness and accordingly the security so created shall not be satisfied by any intermediate payment or the satisfaction of any part of the Outstanding Indebtedness. The security so created shall be in addition to and shall not in any way prejudice or affect the security created by, any deposit of documents, or any guarantee, lien, bill, note, mortgage or other security now or hereafter held by the Mortgagee or any right or remedy of the Mortgagee thereunder and shall not in any way be prejudiced or affected thereby or

-14-

by the invalidity or unenforceability thereof or by the Mortgagee releasing, modifying or refraining from perfecting or enforcing any of the same or granting time or indulgence or compounding with any person liable. All the rights and remedies and powers vested in the Mortgagee by the Mortgage and this Deed may be exercised from time to time as often as the Mortgagee may deem expedient. Notwithstanding that this Deed is expressed to be supplemental to the Mortgage it shall continue in full force and effect after any discharge of the Mortgage.

## DELEGATION

12. The Mortgagee shall be entitled at any time and as often as may be expedient to delegate all or any of the powers and discretion's vested in it by the Security Documents or any of them (including the power vested in it by virtue of Clause 14 hereof) in such manner upon such terms and to such persons as the Mortgagee in his absolute discretion may think fit.

## COSTS AND INDEMNITY

13. **THE OWNER HEREBY AGREES AND UNDERTAKES** to indemnify the Mortgagee and any receiver against all obligations and liabilities whatsoever and when so ever arising which the Mortgagee or Receiver may incur in good faith in respect of in relation to or in connection with the Ship or otherwise howsoever in relation to or in connection with any of the matters dealt with the Security Documents. The Owner shall pay to the Mortgagee on demand all expenses (including legal fees, fees of insurance advisors, printing and out of pocket expenses, together with any tax payable in respect thereof) incurred by the Mortgagee in connection with the enforcement of, or preservation of any rights under, the Mortgage and this Deed or otherwise in respect of the Outstanding Indebtedness and all stamp duties, registration fees and other duties or charges from time to time payable in connection with the execution and registration of the Mortgage and this Deed.

## ATTORNEY

14. (A) **THE OWNER HEREBY IRREVOCABLY APPOINTS** the Mortgagee as its attorney for the duration of the Security Period for the purpose of doing in its name all acts which the Owner itself could do in relation to the Mortgaged Premises and to execute, seal and deliver or otherwise perfect and do all such deeds, assurances, agreements, instruments, acts or things which may be required for the full exercise of all or any of the rights powers or remedies hereby conferred which may be proper in, or in connection with all or any of the purposes aforesaid. The power hereby conferred shall be a general Power or Attorney under the Powers of Attorney Law and the Owner ratifies and confirms and agrees to ratify and confirm and deed, assurance, agreement, instrument, act or thing which the Mortgagee shall execute or do pursuant thereto **PROVIDED HOWEVER** that such power shall not be exercisable by or on behalf of the Mortgagee until the security created by this Deed and the Mortgage shall have become enforceable pursuant to Clause 8 hereof.

    (B) The exercise of such power by or on behalf of the Mortgagee shall not put any person dealing with the Mortgagee upon any inquiry as to whether the said security has become enforceable nor shall such person be in any way affected by notice that the said security has not become so enforceable and the exercise by the Mortgagee of such power shall be conclusive evidence of its right to exercise the same.

-15-

_initial_

## FURTHER ASSURANCE

15. **THE OWNER HEREBY FURTHER UNDERTAKES** as its own expense to execute sign perfect do and (if required) register every such further assurance document act or thing as in the opinion of the Mortgagee may be necessary or desirable for the purpose of more effectually mortgaging and charging the Mortgaged Premises or perfecting the security constituted by the Security Documents.

## NOTICES

16. (A) Any demand notice or other communication required to be made or given in writing under the provisions of this Deed or any other Security Document shall be deemed to have been duly received by the other party (i) if the same be communicated by telex or telecopier during ordinary business hours on the date upon which the telex or telecopy was transmitted or if transmitted outside business hours at the start of the next business day (ii) if the same be communicated by letter upon the business day next following the date of dispatch by Recorded Delivery service.

    (B) Any change of address or of telex or telecopier number shall be promptly notified in wiring by either party to the other. In default of notification of change of address any communication fully dispatched to the other party at the address of its office hereinbefore set our (or any notified new address) shall be deemed to have been received in accordance with the foregoing provision.

    (C) Any communication by telex shall be thereafter confirmed by letter.

## SEVERABILITY

17. Any provision of the Security Documents prohibited by or unlawful or unenforceable under any applicable law shall (to the extent required by such law) be ineffective without modifying the remaining provisions of the Security Documents but where the provisions of any such applicable law may be waived, they are hereby waived to the full extent permitted by such law, to the end that the Security Documents shall be valid and binding documents enforceable in accordance with their respective terms.

## GOVERNING LAW

18. This Deed shall be governed by the laws of **THE BRITISH VIRGIN ISLANDS** and the parties hereby irrevocably submit to the non-exclusive jurisdiction of the **BRITISH VIRGIN ISLANDS COURTS.**

IN WITNESS WHEREOF this Deed has been duly executed the day and year first written above.

Executed as a deed on behalf of
**BYELUVYASEAYA LTD.**

*[signature]*
Marvin Rex Rankin III, as Director

in the presence of:

*[signature]*
Marvin Rex Rankin III, as Personal Guarantor

*[signature]*
Witness

◄ Company Seal

-16-