## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In re:   MARVIN REX RANKIN III[1]   )
SSN: xxx-xx-3901               )      Case No.: 20-80495-CRJ-11
                             )
        and              )
                             )
MARY BETH            )
LEMMOND RANKIN      )
SSN: xxx-xx-7950               )
                             )
Debtors.               )      CHAPTER 11
_____)

### RWS CHARTER, LLC'S AND BAYPORT CORPORATION, LTD'S: (1) RESPONSE IN OPPOSITION TO BRYANT BANK'S MOTION FOR STAY RELIEF; AND (2) MOTION FOR ENTRY OF AN ORDER CONVERTING THESE TWO CHAPTER 11 PROCEEDINGS TO CHAPTER 7 LQUIDATIONS

COMES NOW, RWS Charter LLC and Bayport Corporation, Ltd. (collectively, the "**Corporate Debtors**"), and file this motion on the grounds that follow:

### JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought herein are Sections 105(a), 305(a), 349, 363, 554 and 1112(a) of the Bankruptcy Code and Bankruptcy Rules 1017(a) and 6007.

### PRELIMINARY STATEMENT

3.      The Chapter 11 individual debtors whose case is administratively consolidated with the Corporate Debtors, Marvin Rex Rankin III and Mary Beth Lemmond Rankin (the "**Individual Debtors**"), support this motion, but do not presently seek to have their individual case converted to a

---

[1]    In addition to Marin Rex Rankin III and Mary Beth Lemmond Rankin., the Debtors include the following: RWS Charter LLC, Case No. 20-80470-CRJ11; and Bayport Corporation, Ltd., Case No. 20-80471-CRJ11

Chapter 7 proceeding because they believe they can confirm a plan of reorganization and need not liquidate.

4.      In this matter, the Corporate Debtors and their largest secured creditor, Bryant Bank (the "**Bank**"), initially cooperated and collaborated for each's mutual benefit: Bryant Bank advanced the costs associated with insuring, securing, and maintaining its collateral property while the debtors worked to remove contingent liens from the Bank's collateral and effectuate asset sales.

5.      The Corporate Debtors successfully stripped liens from Bayport Corporation, Ltd.'s real property collateral and these parties cooperated on investigating a claim against an insurance carrier. However, unexpected delays in the liquidation of property associated with the COVID-19 pandemic compounded with the debtors' discovery of potential tort and avoidance actions against the Bank caused these parties' interests to diverge sharply.

6.      The Bank implies that it is owed over $2,500,000.00 and that this amount is wholly attached, secured, and perfected on all property owned by each of the debtors. This in incorrect and discussed below – the Bank's perfected security interests are piecemeal and spread across assets.

7.      The Corporate Debtors aver that Bryant Bank's Motion for Stay Relief is improper because this creditor, by its own admission in its filed proofs of claim, enjoys a nearly $1,000,000.00 equity cushion in the Bayport Corporation Ltd.'s real property. This is property that can be sold for the benefit of all creditors.

8.      Granting the Bank stay relief on the airplane, whose security interest may be improperly perfected, will deprive the estate of an asset that may raise substantial funds for all creditors.

9.      Further, the Bank's pre-petition errors and omissions related to insurance coverage raise questions of unclean hands and *in pari delicto* as equitable defenses to any claim for stay relief.

10.      The Corporate Debtors believe that the appointment of an independent trustee and retention of counsel with litigation and lien avoidance expertise will benefit all creditors in this case and avoid a substantial windfall to the Bank.

## BACKGROUND

11.      On February 18, 2020, the debtors commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code (the "**Filing Date**").

2

12.     The Corporate Debtors are corporate entities that hold title to real and personal property, namely: a charter airplane, a claim to insurance proceeds along with salvage material related to a yacht destroyed in a 2019 hurricane, and two large tracks of undeveloped land in Madison County, Alabama.

13.     The Corporate Debtors sought, through this Chapter 11 process, to liquidate their assets and pay all allowed creditor claims in the case.

14.     However, between Filing Date and the present, and resulting from the economic slowdown brought about by the present COVID-19 health and economic crisis, the Corporate Debtors' attempts to liquidate have been delayed.

15.     While the Bank states in its stay relief motion that it is owed a debt in excess of $2,500,000.00, this amount is not entirely secured and perfected across all of the debtors' property.

16      As reflected in the Bank's filed proofs of claim, its perfected, secured interests in property of each individual estate amounts to substantially less:

RWS Charter, LLC          secured debt totaling $1,350,519.50 [Claims Docs. 8-1 & 9-1]

Bayport Corporation, Ltd.     secured debt totaling $1,082,951.77 [Claims Docs. 11-1]

17.     "A proof of claim executed and filed in accordance with these rules hall constitute *prima facie* evidence of the validity and amount of the claim." Rule 3001(f) of the *Federal Rules of Bankruptcy Procedure.*

18.     The Corporate Debtors believe that a court-appointed Trustee will be best-positioned to evaluate all property of the Corporate Debtors' bankruptcy estates and liquidate assets for the benefit of all creditors.

## BAYPORT CORPORATION, LTD.

19.     In one of its filed proofs of claim [Claim Doc. 11-1], Bryant Bank admits that debtor Bayport Corporation, Ltd. possesses a nearly $1,000,000.00 equity cushion in the collateral real property:

3

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe: ___Real property, not primary residence___

**Basis for perfection:** ___Mortgage, cross-collateralization agmt, guaranty___

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $___2,003,760.00___

Amount of the claim that is secured: $___1,082,951.77___

Amount of the claim that is unsecured: $___0.00___ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Claim Doc. 11-1, p. 2.

20.     This debtor's estate-employed real estate agent has presented multiple purchase offers for individual tracts of the collateral real property. However, as this case has taken longer than expected, prior sales fell apart, and potential legal exposure to the Bank emerged, communications have deteriorated between the parties.

21.     Bryant Bank has overtly blocked or failed to respond to all such real estate offers and, because it possesses a blanket mortgage-lien, it can exert such power, lest the debtor expend the fees for a 11 U.S.C. § 506(d) action to determine the Bank's secured status on each individual parcel of land followed by a 11 U.S.C. § 363(f) motion to sell over the Bank's objection.

22.     While the Bank and Corporate Debtors have reached a stalemate, the estate's employed professionals have avoided liens of the collateral real property and structured sales for which they have not been compensated. Such firms and individuals are entitled to compensation when they provide value and benefit to the estate and its creditors.

23.     Granting Bryant Bank stay relief so that it may consummate the debtor's proposed sales with Huntsville Utilities, Express Oil Change, Inc., Stoneridge Real Estate Group, Inc., and other interested parties would constitute an inequitable windfall for Bryant Bank at the expenses of every other party-in-interest to this case.

24.     The Corporate Debtors also disagree with the Bank's contention that Bayport qualifies as a "single asset real estate" case under 11 U.S.C. § 101(51B). Bayport Corporation, Ltd. owns

4

multiples tracks of real estate that are not part of a single property or relate to an individual project or development; the land is more akin to inventory and this debtor a wholesaler.

25.     Further, the Bank's cross-collateralization of its loans between a house in Hartselle, Alabama, raw law in Madison County, Alabama, a charter airplane, and a yacht in the Caribbean demonstrate that it, too, considered these debtors' interests diversified and outside the nature of land investments or real estate finance. The majority of the Bank's debt is tied to a luxury yacht and airplane charter business, not raw land; the course of dealing between the parties indicate that the Bank treated the Corporate Debtors like one consolidated entity in diverse businesses.

26.     Finally, the Bank's request for a determination of SARE designation is mooted by the Corporate Debtors' motion to convert these cases to Chapter 7.

### RWS CHARTER, LLC

27.     In one of its filed proofs of claim [Claim Doc. 9-1], Bryant Bank admits that debtor RWS Charter, LLC possesses a $55,000.00 equity cushion in the collateral airplane:

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:    Airplane _____

**Basis for perfection:**    Security agt crosscollateralization agmt, business loan agmt _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | |
|---|---|
| **Value of property:** | $  1,405,000.00 |
| **Amount of the claim that is secured:** | $  1,350,519.50 |
| **Amount of the claim that is unsecured:** | $          0.00  (The sum of the secured and unsecured amounts should match the amount in line 7.) |

Claim Doc. 9-1, p. 2 (the "**Airplane Claim**").

28.     According to proof of claim 8, also filed by the Bank, the salvaged yacht (which the Bank values at $100,000.00 in that claim, not inclusive of insurance proceeds) is also secured by the same $1,350,000,00 claim amount.

5

29.     As this Court is aware from earlier pleadings, this debtor possesses a breach of contract insurance claim against its insurance carrier relating to the destroyed yacht; this debtor previously sought, and then withdrew, an application for Court-approval to employ insurance counsel to pursue such a claim.

30.     This Court rightly noted that Bryant Bank, as the senior secured lender, would be the party most likely to benefit from such litigation and should finance the litigation itself. Unfortunately, based on its equity cushion in other collateral, Bryant Bank has demurred from pursuing such litigation.

31.     Thereafter, the Corporate Debtors discovered during investigating the insurance claims that the estate of RWS Charter, LLC possesses tort claims against Bryant Bank for errors and omissions of its in-house insurance department and its mistakes related to a lapse in insurance coverage on the destroyed yacht.

32.     In a related area, this debtor's examination of title connected to the airplane has also uncovered that the Bank's airplane lien did not comply with 14 CFR 49.17(d)(2) concerning the contents of security agreements and financing statements.

33.     Perfecting a lien requires strict compliance with the relevant law and, because airplane finance is unusual, errors can occur. Accordingly, the Bank's security interest in the airplane may not be properly perfected and subject to avoidance under the strong-arm claim of 11 U.S.C. § 544.

34.     There are multiple issues with the Bank's security instruments and litigation exposure tied to this debtor. Until such matters are resolved, Bryant Bank is not entitled to stay relief to liquidate the collateral real or personal property owned by the Corporate Debtors.

**BASIS FOR RELIEF**

35.     The Corporate Debtors believe that a Trustee is in the best position to: (1) investigate the estate's potential causes of actions against Bryant Bank for errors and omissions; (2) investigate the estate's potential lien avoidance actions against Bryant Bank; and (3) liquidate the collateral property in an amount sufficient to benefit all parties-in-interest of this estate.

36.     Pursuant to 11 U.S.C.§ 1112(a), a debtor has the unilateral right to convert a Chapter 11 case to a proceeding under Chapter 7 so long as at the time of filing, the debtor remains the debtor-in-possession, the Chapter 11 case was not filed as an involuntary proceeding, and the case did not previously convert to Chapter 11 at the request of another party-in-interest.

37.     None of those factors apply to the Corporate Debtors.

38.     While the Corporate Debtors have been unsuccessful in liquidating their assets so far so far in this case, the market for airplanes and raw land have improved over the course of this year, and, as evidenced by the land-sale contracts described above, they believe such liquidations are feasible and likely to occur.

39.     Further, because the health of the Corporate Debtors' management has declined over the pendency of this case, a third-party trustee may be better positioned to take action and quickly negotiate agreements for the good of all parties involved.

40.     Denial of Bryant Bank's Motion for Stay Relief, along with a conversion of the Corporate Debtors' cases to proceedings under Chapter 7, is in the best interest of these debtors' estates and will be most likely to maximize value in favor of the creditors collectively and other parties-in-interst.

WHEREFORE, premises considered, debtors RWS Charter, LLC and Bayport Corporation, Ltd. respectfully requests that this Court enter an Order: (1) denying Bryant Bank's Motion for Stay Relief; (2) converting RWS Charter, LLC and Bayport Corporation, Ltd. Chapter 11 cases to proceedings under Chapter 7 of the Bankruptcy Code; and (3) granting such further relief as this Court deems just and proper.

Respectfully submitted this the 17th day of November, 2020.

/s/ Tazewell T. Shepard IV
Tazewell T. Shepard III
Tazewell T. Shepard IV
*Attorneys for the Debtor*

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL  35804
Tel: (256) 512-9924
Fax: (256) 512-9837

7

## CERTIFICATE OF SERVICE

This is to certify that this the 17th day of November, 2020, I have this day served the foregoing motion on all parties requesting notice, all parties listed on the Clerk's Certified Matrix and the Office of the Bankruptcy Administrator, by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

/s/ Tazewell T. Shepard IV
Tazewell T. Shepard IV

8