# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| In re: MARVIN REX RANKIN III[1] | ) | |
| SSN: xxx-xx-3901 | ) | Case No.: 20-80495-CRJ-11 |
| | ) | |
| and | ) | |
| | ) | |
| MARY BETH | ) | |
| LEMMOND RANKIN | ) | |
| SSN: xxx-xx-7950 | ) | |
| | ) | |
| Debtors. | ) | CHAPTER 11 |
| _____ | ) | |

## DEBTORS MARVIN REX RANKIN AND MARY BETH LEMMOND RANKIN'S RESPONSE IN OPPOSITION TO BRYANT BANK'S MOTION FOR STAY RELIEF

COMES NOW Marvin Rex Rankin III and Mary Beth Lemmond Rankin (the "**Individual Debtors**") and respond as follows:

### Background

1. On November 13, 2020, Bryant Bank (the "**Bank**") filed a Motion to lift to 11 U.S.C. § 362 Automatic Stay to repossess a number of properties owned by the Individual Debtors and their corporate co-debtor affiliates. [Doc. 182].

2. The Bank's motion for stay relief included a request for leave so it could to take action against real property located at 901 Main St. E., Hartselle, AL 35640 (the "**Collateral**").

3. In an affidavit attached to that motion and filed with this Court, Kenneth D. Watson, a corporate representative for the Bank, states as follows: "Since the filing of this case, none of the Debtors have made payment to the Bank nor have they offered any payment despite being in possession of and using some or all of this collateral." Watson Aff., Doc. 182-1, p. 4, ¶ 8.

4. The undersigned, as an officer of the Court, affirmatively states that Mr. Watson's statement above is incorrect.

---

[1] In addition to Marin Rex Rankin III and Mary Beth Lemmond Rankin., the Debtors include the following: RWS Charter LLC, Case No. 20-80470-CRJ11; and Bayport Corporation, Ltd., Case No. 20-80471-CRJ11

5. Debtor's counsel has been in regular communication with the Bank's attorneys, providing updates and collaborating on issues of mutual interest.

6. For example, on September 22, 2020, attorney Tazewell T. Shepard III offered for the Debtors to begin making payments of $500.00 per month on the Hartselle House. A copy of the email is attached as Exhibit "A."

7. On no less than four occasions, the Debtors have made similar offers to the Bank for periodic payments tied to the Hartselle House.

8. Each time, the Bank has ignored, demurred, or rejected the offers of adequate protection or cash payments.

9. Throughout this case, the Bank has taken the position that it would not accept periodic payments from the debtors and instead expected to be paid-in-full on all its claims from the sale of other property owned by the Individual Debtors' corporate co-debtor affiliates.

10. To date, the Individual Debtors have not sought a court-order establishing adequate protection under 11 U.S.C. § 361 for the Collateral, because it did not appear in the estate's best interest to expend resources forcing the Bank to accept unwanted payments when that creditor believes its interests are already adequately protected by an equity cushion in other property.

**Offer of Adequate Protection**

11. The Collateral may produce income as a rental property and is necessary for the Individual Debtors' successful reorganization.

12. Further, the Collateral is real estate, not equipment or other depreciating personal property. The Individual Debtors aver that the Collateral's value is stable and gradually appreciating.

13. The Bank has provided no evidence to support a contention that Collateral's value will diminish over time.

14. 11 U.S.C. § 361(a) allows the Court to make a finding of appropriate periodic cash payments to adequately protect a secured creditor's interest in collateralized property from any diminution in value.

15. The Individual Debtors reiterate and repeat their offer of monthly cash payments of $500.00 to Bryant Bank as adequate protection for Bank's interest in the Collateral (the "**Adequate Protection Offer**").

16. According to the Bank's filed proof of claim [Claims Doc. 10-1], the Adequate protection Offer is approximately 50% higher than what would constitute a monthly interest-only payment on the amount this creditor's perfected, secured claim.

17. Thus, the Adequate Protection Offer will sufficiently protect the Bank's perfected secured interest in the Collateral.

WHEREFORE, the Individual Debtors respectfully request that the Court enter an order: (1) denying the Bank's motion for stay relief; (2) approving the Individual Debtors' Adequate Protection Offer; and (3) granting such further relief as this Court deems just and proper.

Respectfully submitted this the 17th day of November, 2020.

    */s/ Tazewell T. Shepard IV*
Tazewell T. Shepard III
Tazewell T. Shepard IV
*Attorneys for the Debtor*

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
Fax: (256) 512-9837

## CERTIFICATE OF SERVICE

This is to certify that this the 17th day of November, 2020, I have this day served the foregoing motion on all parties requesting notice, all parties listed on the Clerk's Certified Matrix and the Office of the Bankruptcy Administrator, by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

    */s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV



Ty Shepard <ty@ssmattorneys.com>

## Rankin / Bayport / RWS Charter
1 message

**Tazewell Shepard** <taze@ssmattorneys.com>  Tue, Sep 22, 2020 at 3:40 PM
To: Greg Burgess <CGB@lanierford.com>, Tracy Daniel <tdaniel@alabamalawfoundation.org>
Cc: Ty Shepard <ty@ssmattorneys.com>

Greg and Tracy,

Pursuant to our recent telephone conversation, I will set out below the debtors' status report and proposal for moving this case forward.

Real Property – The existing sale contract and a newer offer for more property are in limbo until the City of Huntsville builds a utility sub-station. The debtors' court-appointed realtor is working to get the City to get it done. Given the difficulty selling the land to this point, we would be willing to discuss other options, like an auction, but in our experience commercial listings are the best methods for maximizing value for raw land.

Airplane – The debtors are ready to seek a sale of the aircraft and believe that employment of a broker is necessary for a good result. Bryant Bank is checking with the gentleman it employed to review the logs to see if he can serve as a broker for the sale. We are also happy to contact potential brokers, but agree that the Bank should reach out to its expert first.

Given that there could be mechanics liens and the filed *lis pendens* against the real estate, we have found that selling assets under Section 363 maximizes value because we can give title free and clear of all liens and encumbrances. The debtors propose a carve out from the net sale proceeds to cover the debtors' administrative expense for these liquidations.

Hartselle House – The debtors propose making monthly adequate protection payments to Bryant Bank in the amount of $500.00, starting October 1. This adequate protection arrangement will prevent any collection activity as to the Hartselle House but will not limit Bryant Bank's creditor rights if the debtors do not make their payments or when the six months period is concluded.

CPA Litigation – The suit against the former CPA is proceeding. The court recently ordered sanctions against the defendant for his failure to comply with the debtors' discovery requests.

Insurance Litigation – we would like to have another discussion about how to proceed since this litigation would substantially help make the Bank whole. If the litigation is a non-starter, we can pivot to other options, but want to make it clear that the Bank, as loss-payee on a policy that appears to have been canceled without contractual cause and without proper notice, stands the most to gain from pursing this litigation.

If we cannot agree to liquidating these assets, we will likely need to seek a 11 USC § 506 surcharge against the collateral, convert the Bayport and RWS cases to Chapter 7, and under SBRA, the Rankins may discharge virtually all their liability to the Bank beyond the value of the liens on the Hartselle House. We do not think that such a move would be in anyone's best interest, so we hope to work together to maximize value and get all creditors paid in full.

Please feel free to contact Ty or me with any questions or comments your client may have. We need to make some movement on the direction of this case before the hearings set for Monday, September 28. Thanks.

Taze

Tazewell T. Shepard

**SPARKMAN, SHEPARD & MORRIS, P.C.**

P.O. Box 19045

Huntsville, Al 35804

Tel: 256/512-9924

Fax: 256/512-9837

**PRIVILEGED AND CONFIDENTIAL MATERIAL**

Confidentiality Notice – The information in and content of this telecopy transmission is legally privileged and confidential, and is intended only for the use of the recipient named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of the information or content of this telecopy is strictly prohibited. If you have received this copy in error, please immediately notify us by telephone and return the original telecopy to us at the address shown above. It is not the intention of the sender or the named recipient to waive the attorney-client privilege, the attorney work-product doctrine, or any secrecy or proprietary rights in this material.

Payment Notice for New Clients – For out-of-state payments over $5,000.00, this law firm accepts only bank wire transfers. For out-of-state payments under $5,000.00, we accept only wire transfers, and cashier's checks and certified checks issued by local banks. With any wire transfer or local check, there is a waiting period of seven (7) days after deposit in the firm's account and confirmation by the issuing bank before any of the funds will be transferred to other parties. This law firm does not accept money orders (Western Union, USPS, etc.) or other electronic payments (ACH deposits, telephone fund transfers, etc.).